IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BERKLEY REGIONAL INSURANCE CO.,   :

    Plaintiff,   :

v.   :   Case No. ELH-12-2578

JAMES T. REDDING, INC., *et al.*   :

    Defendants.   :

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Judgment by Default ("the Motion") filed by Plaintiff Berkley Regional Insurance Company ("Berkley") against Defendants James T. Redding and Kimberly Redding (collectively, the "Defendants").[1] (ECF No. 30). Defendants have not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2.a. On June 10, 2014, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Hollander referred this case to me for a report and recommendation on Plaintiff's Motion. (ECF No. 31). I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiff's Motion be GRANTED.

**I.   FACTUAL AND PROCEDURAL HISTORY**

In this case, Berkley filed suit against Defendants James T. Redding, Inc. d/b/a JTR, Inc. ("JTR"), James T. Redding and Kimberly Redding for the breach of a contractual indemnity agreement.[2] *See* Am. Compl., ECF No. 20. The Defendants were personally served with the

---

[1] Berkley does not seek a default judgment against Defendant James T. Redding, Inc. d/b/a JTR, Inc. at this time because "Defendant JTR previously filed a Chapter 7 bankruptcy proceeding," which has resulted in a stay of Berkley's claims against JTR. (ECF No. 20 at 1).

[2] Previously, Berkley moved for a default judgment (ECF No. 11) as to its original Complaint (ECF No. 1). The Court denied that motion without prejudice to renewal because Berkley's motion sought damages in excess of the amount sought in its Complaint, in

copies of the Amended Complaint and summonses, but did not file an answer or responsive pleading within the requisite time period. On December 5, 2013, Berkley moved for the Clerk's entry of default (ECF No. 26), and the Clerk entered default against the Defendants on December 6, 2013 (ECF No. 27). On June 9, 2014, Berkley filed the Motion, to which Defendants have not responded.

## II.     LEGAL ANALYSIS

### A.     Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as

---

contravention of Fed. R. Civ. P. 54(c). Subsequently, Berkley filed and served its Amended Complaint (ECF No. 20), and now seeks damages consistent with those sought in the Amended Complaint.

true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

**B.     Liability**

Subject matter jurisdiction in this case is predicated on the diversity of the parties. A federal court sitting in diversity must apply the choice of law rules applicable in the forum state. *Klaxon v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941). In contract actions, Maryland courts generally apply the law of the jurisdiction where the contract was made, pursuant to the doctrine of *lex loci contractus*. *See, e.g., Allstate Ins. Co. v. Hart*, 327 Md. 526, 611 A.2d 100 (1992). It is well established in Maryland, however, that "parties to a contract may agree to the law which will govern their transaction, even as to an issue going to the validity of the contract." *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 469 (4th Cir. 2011). There are two

exceptions that Maryland courts consider with respect to the enforcement of a contract's choice-of-law provision:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has materially greater interest than the chosen state in the determination of the particular issue and which [otherwise] would be the state of applicable law in the absence of an effective choice of law by the parties.

*Id.* (quoting Restatement (Second) Conflict of Laws § 187(2)(a), (b) (1971)).

Here, the General Agreement of Indemnity ("Indemnity Agreement") that governs this dispute provides that the laws of the State of New York apply. (ECF No. 20-1 at 7) ("This Agreement, its construction, validity, performance and all rights, obligations and liabilities arising hereunder shall be governed, construed and enforced in accordance with the laws of the State of New York. . . ."). Neither of the exceptions that would prevent Maryland courts from applying New York law apply in this case. Accordingly, I find that New York law governs this breach of contract action.

Count I of the Amended Complaint alleges that Defendants are liable to Berkley for Defendants' breach of a contractual indemnity agreement. (ECF No. 20 ¶¶ 34-38). Under New York law, express indemnity agreements are, like other contracts, "interpreted in accordance with the intent of the parties as expressed in the language of the agreement." *Del Vecchio v. Danielle Associates, LLC*, 108 A.D.3d 583, 585, 969 N.Y.S.2d 477, 480 (N.Y. App. Div. 2013) (internal quotation omitted). In New York, "[t]he essential elements of a cause of action to recover damages for breach of contract [are] the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages." *JP Morgan Chase v. J.H. Elec. of New York, Inc.*, 69 A.D.3d 802, 803, 893 N.Y.S.2d 237, 239

(2010). "The promise to indemnify should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.* An indemnity agreement "that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170 (2002) New York courts "consistently enforce[]" indemnity agreements. *See, e.g., Am. Home Assur. Co. v. Gemma Const. Co., Inc.*, 275 A.D.2d 616, 619, 713 N.Y.S.2d 48, 52 (2000) ("Defendants derived the benefit of plaintiff's bonds and other services, obtained at substantial financial cost to American Home, and their responsibilities are governed by their agreement to indemnify plaintiff against 'all loss and expense, including attorney fees, incurred by Surety by reason of having executed any Bond.'").

Here, the Indemnity Agreement is between Berkley and Defendants, both of whom signed the agreement in their individual capacities. (ECF No. 20-1 at 8-10). The Indemnity Agreement generally requires Defendants to indemnify Berkley for "all losses, costs and expenses" incurred by reason of Berkley having issued any surety bonds on JTR's behalf. Specifically, the Indemnity Agreement (identifying Berkley as the "Surety" and Defendants as the "Indemnitors" or "Undersigned") provides:

> 1.01. The Undersigned, jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse Surety for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or Surety's procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by Surety; (ii) any loans, credits, advances or monies guaranteed, lent, advanced or extended by Surety from time to time to or for the account of any Undersigned; (iii) Surety having accepted

>Collateral as security for the obligations of the Undersigned to Surety or the enforcement of Surety's interest therein; or (iv) the occurrence of an Event of Default and any prosecution, investigation, defense or settlement of the same by Surety; or (v) any action or inaction by Surety or liability incurred or sustained by Surety in reliance upon representations or statements made by Indemnitors or their attorneys and representatives regarding defenses available to an Indemnitor and/or Surety to claims made against such Bonds (all of the foregoing referred to singly as an "Indemnified Claim" or an "Indemnified Expense" and collectively as an "Indemnified Claim or Expense"). The Undersigned shall also pay to the Surety interest on all such payments, from the date thereof, at the minimum legal post-judgment rate permitted by New York law, compounded daily.

(ECF No. 20-1 at 2).

Taking as true the well-pleaded allegations of the Amended Complaint (ECF No. 20), Defendants' liability is readily established in this case. The Indemnity Agreement is a valid contract with unambiguous terms, thus satisfying the first element under New York law for this type of claim. As to the second element, I find that Berkley performed under the contract by issuing surety bonds for the benefit of JTR and then abiding by its obligations under those bonds. As to the third element, I find that Defendants breached the Indemnity Agreement by failing to indemnify Berkley for its losses, as required by the agreement and as demanded by Berkley. Finally, as to the fourth element, I find that Berkley has sustained damages as a result of Defendants' breach of the Indemnity Agreement, including the payments it made under the payment and performance bonds, as well as attorneys' fees and consultants' fees incurred in connection with the bonds at issue in this case. I find that Berkley has stated a legitimate cause of action in Count I of the Amended Complaint and recommend that a default judgment be entered in favor of Berkley and against Defendants as to this count.

    C.    **Damages**

Having determined that Berkley has established liability, it is now appropriate to determine the damages to which Berkley is entitled. Generally, an evidentiary hearing is required to determine an award of damages, even in the case of a defendant's default. *See Laborers' Dist.*

*Council Pension v. E.G.S., Inc.,* No. WDQ-09-3174, 2010 WL 1568595 (D. Md. Apr. 16, 2010). However, the Court may award damages "if the record supports the damages requested." *Id*. at *3 (collecting cases). Here, Berkley has provided sufficient evidence to support its claim for damages in the amount of $3,180,802.46. The damages Berkley claims fall into three categories: (1) payments Berkley made pursuant to its obligations under the surety bonds that it issued on JTR's behalf and for which it has not been indemnified, which amount to a total of $2,796,501.74; (2) attorneys' fees that Berkley has incurred in connection with the surety bonds it issued on JTR's behalf, which amount to $138,456.17; and (3) consultants' fees that Berkley has incurred in connection with the surety bonds it issued on JTR's behalf, which amount to a total of $245,844.55. For the reasons stated below, I recommend that the Court award Berkley damages in the total amount of $3,180,802.46 against the Defendants.

1. **Payments on bond obligations**

Berkley has submitted ample evidence to support its claim for damages related to payments it made pursuant to its obligations under the surety bonds it issued on JTR's behalf. The affidavit of Ellen M. Cavallaro, Vice President of Surety Claims at Berkley, (ECF No. 30-1) outlines Berkley's issuance of various surety bonds on JTR's behalf (*see* ¶¶ 3-8) and incorporates a spreadsheet that documents the payments Berkley made in accordance with its obligations under those bonds (*see* ¶ 18 & ECF No. 30-7). As alluded to above, Berkley issued surety bonds for four projects (the "Bonded Projects") to which JTR was a contractor.[3] (*See* ECF

---

[3] At JTR's request, Berkley issued the following surety bonds that "assured JTR's subcontract obligations to the general contractors on the projects," with Berkley acting as the surety: (1) payment and performance bonds for the Citizens Care & Rehabilitation Center & Montevue Home, Drywall and Paint Project in the amount of $2,512,000.00 (ECF No. 30-2); (2) payment and performance bonds for the Bus Body Shop (Bus II) at the Carmen Turner Facility in the amount of $640,000.00 (ECF No. 30-3); payment and performance bonds for the Museum Support Facility, Carlisle Barracks, PA in the amount of $300,000.00 (ECF No. 30-4); and

No. 30-1, ¶¶ 4-7). After JTR's financial condition "deteriorated to the point that it was unable to pay its obligations to its subcontractors and suppliers and complete the performance of its work on . . . the Bonded Projects," Berkley made certain loans to JTR and "made numerous payments to JTR's subcontractors and suppliers pursuant to Berkley's obligations under its payment bonds." *Id*. Berkley also made payments pursuant to its performance bonds. Berkley has submitted evidence that it paid a total of $164,164.99 in connection with its bond obligations for the Carlisle Barracks Project; a total of $462,613.89 in connection with its bond obligations for the Bus Body Shop Project; a total of $849,906.37 in connection with its bond obligations for the Citizens Care Project; and a total of $3,214,045.41 in connection with its bond obligations for the Manhattan Project. (ECF No. 30-7). Berkley's payments on the Manhattan Project are offset by certain recoveries it made on the project in the amount of $1,431,852.89. Ms. Cavallaro attests that these recoveries came to Berkley in consideration for its work through a completion contractor on the project, and that the recoveries "serve to offset Berkley's losses." (ECF No. 30-1 at 6). In addition to the recoveries on the Manhattan Project, Ms. Cavallaro attests to other, unspecified recoveries that, when combined with the Manhattan Project recoveries, amount to a total of $1,894,228.92. (ECF No. 30-1 at 6) ("Berkley has recovered certain monies from the Obligees on the bonds that Berkley issued, and Berkley has provided the Defendants with a credit for these recoveries."). Berkley has properly deducted the recoveries it received from the amount of damages it seeks against Defendants. I recommend that the Court award Berkley $1,894,228.92 in damages against Defendants for the payments it made and losses it incurred pursuant to its obligations under the surety bonds in this case.

---

payment and performance bonds for the USAMRIID Replacement, Ft. Detrick, Maryland Project (the "Manhattan Project") (ECF No. 30-5).

### 2.     Attorneys' fees

Berkley also seeks damages for the attorneys' fees it incurred in connection with its performance of its obligations under the surety bonds. These fees are recoverable under the Indemnity Agreement. (ECF No. 20-1 at 2) ("[Defendants] . . . shall indemnify [Berkley] from and against . . . investigative costs and the fees and expenses of attorneys . . . of any nature whatsoever. . . ."). Even where an indemnification agreement that provides for the recovery of attorneys' fees does not require that the fees be reasonably incurred, courts that have addressed this issue have nonetheless examined the fees to determine their reasonableness. *See, e.g., Am. Motorists Ins. Co. v. Trans Int'l Corp.*, 265 A.D.2d 280, 281, 696 N.Y.S.2d 186, 187 (N.Y. App. Div. 1999) ("Indemnification agreements which include provisions . . .for an attorney's fee are enforceable. . . . The indemnitee must, however, demonstrate that it reasonably and in good faith incurred such a fee."); *Int'l Bus. Machines Corp. v. Murphy & O'Connell*, 183 A.D.2d 681, 682, 586 N.Y.S.2d 488 (N.Y. App. Div. 1992).

Here, Berkley was represented by attorneys David D. Gilliss and Eric G. Korphage of the law firm of Pike & Gilliss, LLC, and the attorneys' fees amount to a total of $138,456.17. (ECF No. 30-1 at 5-6). Mr. Gilliss, who has practiced for more than 25 years, charged an hourly rate of $275.00. Mr. Korphage has practiced for about 13 years and charged an hourly rate of $250.00. Berkley has attached an affidavit of Mr. Gilliss in which he attests that he has "over twenty-five years of experience practicing in the areas of construction and surety law," and that his law firm represented Berkley "[i]n investigating and defending against claims against bonds and/or in enforcing the covenants, terms and conditions of the General Agreement of Indemnity, and . . . as a consequence of Berkley issuing surety bonds on behalf of [JTR]." (ECF No. 30-9). The hourly rates for both of the attorneys fall within the presumptively reasonable range in this

district for attorneys with comparable experience, as set forth in Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases").[4] I have reviewed the work performed by Berkley's attorneys and find that the time the attorneys spent on this case is reasonable. I recommend that the Court award Berkley $138,456.17 in damages to account for the attorneys' fees Berkley incurred in connection with its obligations under the surety bonds in this case.

### 3. Consultants' fees

Berkley also seeks reimbursement of the consultants' fees it incurred in connection with its performance of its obligations under the surety bonds. These fees are recoverable under the Indemnity Agreement. (ECF No. 20-1 at 2) ("[Defendants] . . . shall indemnify [Berkley] from and against . . . investigative costs and the fees and expenses of . . . accountants and other professionals or service providers of any nature whatsoever. . . ."). Ms. Cavallaro attests that Berkley retained ParenteBeard, LLC[5] (a forensic accounting firm) and Surety Consultants, Inc. (a construction consultant) to provide consulting services to Berkley in connection with the surety bonds it issued to JTR. ParenteBeard, LLC's invoices are attached to the Motion and total $131,146.29. (ECF No. 30-8 at 1-95). Surety Consultants, Inc.'s invoices are also attached to the Motion and total $114,698.26. (ECF No. 30-8 at 96-153). I find that Berkley has submitted

---

[4] The billing records Berkley submits to support its claim for attorneys' fees also indicate that work was performed by two other attorneys at the law firm of Pike & Gilliss, LLC Joel Williams (ECF No. 30-9 at 75) and Patrick Madigan (ECF No. 30-9 at 85, 123-125). These attorneys' hourly rates also fall within the presumptively reasonable range in this district for attorneys with comparable experience, and I find that the time they spent working on this matter was reasonable. I also note that Berkley was represented by Mr. Gilliss and Mr. Korphage from September 2011 through the present time, but only seeks the attorneys' fees that were incurred from September 15, 2011 through April 1, 2014. (ECF No. 30-9).

[5] Ms. Cavallaro goes on to state that Berkley has attached invoices from both Invotex Group and ParenteBeard, LLC for forensic accounting services, but that the "invoices represent time from the same consultants/accountants; they simply joined a different company." (ECF No. 30-1 at 6)

sufficient evidence to supports its claim for $245,844.55 in damages for the reimbursement of consultants' fees and that the fees are reasonable given the circumstances of this case. I recommend that the Court award Berkley $245,844.55 in damages to account for the consultants' fees it incurred in connection with its obligations under the surety bonds in this case.

### III.    CONCLUSION

In sum, I recommend that the Court:

1. Grant Plaintiff's Motion for Judgment by Default (ECF No. 30) as to Count I; and

2. Enter judgment in favor of Berkley Regional Insurance Company and against Defendants James T. Redding and Kimberly Redding, jointly, severally, and individually in the amount of $3,180,802.46, plus costs.[6]

I also direct the Clerk to mail a copy of this Report and Recommendation to Defendants at the addresses listed on Plaintiff's Amended Complaint. (ECF No. 20). Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


August 8, 2014                                  /s/
Date                                            Timothy J. Sullivan
                                                United States Magistrate Judge

---

[6] As stated above, the total amount of damages is calculated by the sum of $2,796,501.74 in bond payments and losses; $138,456.17 in attorneys' fees; and $245,844.55 in consultants' fees.